UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM JOSHUA MENDES,<br><br>             Plaintiff,<br><br>v.<br><br>JOHN WETZEL, et al.,<br><br>             Defendants. | CIVIL ACTION NO. 3:19-CV-02087<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

This is a *pro se* civil rights action, initiated upon the filing of the original Complaint in this matter by prisoner-Plaintiff Adam Joshua Mendes ("Mendes") on October 24, 2019. (Doc. 2). In his Complaint, Mendes asserts a violation of his Eighth Amendment constitutional rights under 42 U.S.C. § 1983, arising from an incident that occurred while he was in his cell at State Correctional Institution at Dallas. ("SCI-Dallas") (Doc. 2, at 5, 6). Mendes alleges that the incident involved a piece of concrete falling from his cell and striking him in the head, after which he was not provided medical treatment for more than four hours. (Doc. 2, at 5-6). Mendes is currently incarcerated at SCI-Dallas in Luzerne County, Pennsylvania. (Doc. 2, at 1). Mendes brings his claim against John Wetzel ("Wetzel"), John Ramson ("Ramson"), Acting Grievance Officer Amanda West ("West"), Lieutenant A. Litwhiler ("Litwhiler"), Chief Grievance Officer D. Varner ("Varner"), Officer John Doe One, and Officer John Doe Two (hereinafter collectively known as "Defendants"). (Doc. 2, at 1). All Defendants have entered their appearances in this matter through counsel and all parties have consented to the undersigned's jurisdiction to handle proceedings in this matter. (Doc. 21). Now pending before the Court is Defendants' Motion to Dismiss filed on July 13,

2020. (Doc. 20). The motion has been fully briefed and is ripe for disposition. (Doc. 21; Doc. 22; Doc. 23).

For the reasons discussed herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On October 24, 2019, Mendes initiated this action in the United States District Court for the Eastern District of Pennsylvania. (Doc. 2). Along with his Complaint, Mendes filed a motion for leave to proceed *in forma pauperis* (Doc. 1). The Eastern District Court denied Mendes's motion to proceed *in forma pauperis* on October 29, 2019. (Doc. 4). Mendes subsequently filed his prisoner trust fund account statement on November 8, 2019. (Doc. 5). On September 22, 2019, the Eastern District Court directed the Clerk of Court to transfer this case to this Court and that this Court shall be given discretion to rule on Mendes's motion to proceed *in forma pauperis*. (Doc. 6). Upon receiving this case, this Court directed Mendes to either pay the filing fee or file a signed application to proceed *in forma pauperis*. (Doc. 8). Mendes filed a second motion for leave to proceed *in forma pauperis*, including certification on January 2, 2020 which this Court granted on May 13, 2020.[1] (Doc. 9; Doc. 14). After waiver of service, the Defendants filed the Motion to Dismiss that is now pending before the Court on July 13, 2020. (Doc. 20). In response, Mendes filed a brief in opposition (Doc. 22) to which the Defendants filed a reply brief (Doc. 23).

Mendes's Complaint alleges that Defendants deprived him of adequate and prompt medical treatment when he was hit in the head by a falling concrete block in his cell. (Doc. 2,

---

[1] Mendes also filed a Motion to Stay (Doc. 12) on April 8, 2020 which this Court denied in its Order on May 13, 2020. (Doc. 14).

at 5-6). Mendes states that when he was ordered into his cell at SCI-Dallas, he informed John Doe One that "repairs were [being] done on the cells above his, and debris was coming down."[2] (Doc. 2, at 5). John Doe One subsequently stated, "I don't see anything wrong with your cell, you need to go inside now, or I will write you up!" (Doc. 2, at 5). After Mendes entered his cell, a piece of concrete fell from the ceiling and struck him in the back of the head. (Doc. 2, at 5). According to the Complaint, Mendes, along with three other inmates, informed John Doe Two that he was injured after which John Doe Two "denied [Mendes] medical treatment." (Doc. 2, at 5). Mendes was eventually taken to the infirmary where he was "[merely] treated" which included cleaning, treating, and photographing the injury along with a prescription for pain. (Doc. 2, at 5-6) (brackets in original). Mendes still complains of "severe headache[s,] . . . brief blackouts and loss of balance from time to time all [of] which never existed prior to this incident." (Doc. 2, at 6).

Mendes imputes supervisory liability for the actions by John Doe One and John Doe Two onto Defendants Wetzel, the Secretary of the Pennsylvania Department of Corrections and Litwhiler, a lieutenant at SCI-Dallas. (Doc. 2, at 3-4). In addition, Mendes claims that Ramson was personally involved in the incident but does not indicate how he was involved in the stated facts. (Doc. 2, at 3, 5-6). Finally, Mendes attributes liability to Ramson, West, and Varner for issues involving their treatment of Mendes's grievance filings. (Doc. 2, at 3-4).

The allegations outlined above give rise to Mendes's suit under § 1983 and the Eighth Amendment. (Doc. 2, at 1-2). For relief, Mendes seeks compensatory and punitive damages in the amount of $800,000. (Doc. 2, at 2).

---

[2] Mendes's complaint contained multiple typographical errors. (Doc. 2). For ease of reading, most brackets have been omitted when quoting the original document.

## II. DISCUSSION

Defendants' move to dismiss Plaintiff's Complaint on the grounds that Plaintiff "fails to state claims upon which relief may be granted." (Doc. 21, at 1). Defendants state that Plaintiff attributes liability to Defendants on supervisory grounds or based on grievance decisions, "neither of which are proper claims." (Doc. 21, at 1). Additionally, Defendants argue that the claims against the John Doe Defendants, although not falling within the above two categories, should be dismissed because Plaintiff only alleges "simple negligence, which is not proper under 8th Amendment case law." (Doc. 21, at 1).

### A. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

  B. <u>Plaintiff fails to assert actions of personal involvement against Defendants Wetzel and Litwhiler.</u>

Defendants move for dismissal against Defendants Wetzel and Litwhiler for lack of personal involvement. (Doc. 21, at 4-5). The Court finds that the claims against Wetzel and Litwhiler should be dismissed for lack of personal involvement. The Third Circuit has found

that "a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481, F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). In civil rights actions "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). To "plead that [the Defendants here are] liable in [their] individual capacity[ies] as supervisor[s], [Mendes] had to allege that [they] w[ere] personally involved in the [alleged] constitutional violation[s]—vicarious liability is not enough." See *Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 131 (3d Cir. 2017).

      In his Complaint, Mendes claims that Wetzel possesses supervisory liability through his "involvement . . . [and] demands [through his] department's policies and process [and by] . . . allowing his staff discretion regarding housing inmates within his facilities" (Doc. 2, at 3). However, Mendes does not state how Wetzel gave "personal direction or [had] actual knowledge and acquiescence" of the injuries to which he suffered. *See Rode*, 845 F.2d at 1207. Mendes must assert "more than labels and conclusions" in order to provide claims against a defendant. See *Twombly*, 550 U.S. at 555. Here, Mendes makes conclusions and assumptions about Wetzel that are not supported by any further factual allegations besides Wetzel's position as the Secretary for the Pennsylvania Department of Corrections. *See Phillips*, 687 F. App'x at 131 (stating that "vicarious liability is not enough" to show personal involvement as required when asserting a constitutional violation). Even when construing his factual assertions as true, Mendes has not sufficiently alleged that Wetzel "established a policy, practice, or custom that directly caused the harms that [Mendes] allegedly endured," or that Wetzel was directly involved with such harms. *See Phillips*, 687 F. App'x at 131. Therefore,

Mendes has failed to state a claim against Defendant Wetzel.

In addition, Mendes fails to allege personal involvement on the part of Defendant Litwhiler. In his Complaint, Mendes states that Litwhiler possesses supervisory liability and denied Mendes medical treatment.³ (Doc. 2, at 4). Mendes also asserts that Litwhiler did not find any "wrong doing by his under staff [and found] no seriousness in incarcerating a living soul inside a cell from which pieces of concrete were falling." (Doc. 2, at 4). Courts have found that "participation in the after-the-fact review of a grievance or appeal is insufficient to establish personal involvement on the part of those individuals reviewing the grievance." *Simonton v. Tennis*, 2010 WL 339938, at *2; *see also Rode*, 845 F.2d at 1208; *Croom v. Wagner*, 2006 WL 2619794, at *4 (E.D.Pa. Sept. 11, 2006). Allegations of incorrect findings are not enough to establish personal involvement by the defendant in the alleged unconstitutional conduct. *Brooks v. Beard*, 167 F.App'x 923, 925 (3d Cir. 2006). Here, Mendes only asserts that Litwhiler was personally involved in the supervision of his staff and their grievance findings. (Doc. 2, at 4). Therefore, Mendes has not asserted a claim sufficient to attribute personal liability against Defendant Litwhiler.

C. Plaintiff fails to assert a valid claim concerning the grievance decisions of Ransom, West, and Varner.

Defendants' assert that Mendes presents allegations against Defendants Ransom, West, and Varner that do not support "a premise for liability" because they arise out of their denial of relief and findings in response to Mendes's grievance complaint. (Doc. 21, at 5).

---

³ Mendes states that Defendant Litwhiler denied him medical treatment "as averred herein above with Ms. West." (Doc. 2, at 4). The claims against Defendant West involve her findings as a grievance officer and do not concern what happened to Mendes inside his cell or during his medical treatment. (Doc. 2, at 3-4). Therefore, the Court assess Defendant Litwhiler's liability as it pertains to his supervisory role in grievance procedures.

Courts, including the Third Circuit, have established that "inmates have no constitutionally protected right to a grievance procedure." *Hakala v. Klem*, 2009 WL 3852787, at *5 (M.D. Pa. 2009); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977). The right of inmates to seek investigation of their grievances is limited to their right of access to the courts. *Hakala*, 2009 WL 3852787, at *5. "The failure to favorably address, respond to and/or investigate a grievance, as well as the denial of a grievance appeal do not implicate a constitutional right." *Hakala*, 2009 WL 3852787, at *5.

Taking his allegations as true, Mendes fails to state a claim that Defendants Ransom, West, and Varner violated his constitutional rights. *See Jones*, 433 U.S. at 137-38. Mendes has no constitutional right to a grievance procedure; the Department of Corrections policy is in place as a threshold to accessing the courts. *See Jones*, 433 U.S. at 137-38. In his Complaint, Mendes alleges that West, the acting grievance officer, refused to recommend medical treatment and denied any type of relief. (Doc. 2, at 4). Additionally, Mendes states that Ramson should be held liable because he denied Mendes relief through administrative remedies and "was made aware of the cause of action at hand." (Doc. 2, at 3). Finally, Mendes asserts that Varner, the Chief Grievance Officer, made "unrighteous findings" when she failed to find any evidence of wrongdoing. (Doc. 2, at 4). All of Mendes's claims against the Defendants Ransom, West, and Varner arise from their denial of relief and findings in response to Mendes's grievance complaint. (Doc. 2, at 3-4). The administrative decisions of the Defendants do not implicate a constitutional right. *See Hakala*, 2009 WL 3852787, at *5 (stating that claims "exclusively related to [defendants] failure to respond to grievances or inmate requests, or the denial of a misconduct appeal filed by Plaintiff . . . do not rise to the level of inhumane treatment necessary to state a claim under the Eighth Amendment").

Therefore, Mendes has not asserted a claim to which relief may be granted as to Defendants Ransom, West, and Varner.

    D. PLAINTIFF DOES ASSERT SUFFICIENT EIGHTH AMENDMENT CLAIMS AGAINST THE JOHN DOE DEFENDANTS.

Defendants argue that Mendes fails to meet the standard for deliberate indifference in his allegations against the John Doe Defendants and Defendant Litwhiler.[4] (Doc. 21, at 6-9). Mendes asserts claims of negligence and deliberate indifference by the John Doe Defendants arising out of his confinement in an unsafe cell and his delay in medical treatment. (Doc. 2, at 3, 5; Doc. 22, at 7-8). In his complaint, Mendes states that John Doe One ordered Mendes into his cell even after Mendes informed John Doe One of the debris that was falling down in his cell. (Doc. 2, at 5). Additionally, Mendes claims that John Doe One "took a mere look inside . . . and stated: 'I don't see anything wrong with your cell, you need to go inside now, or I will write you up!'" (Doc. 2, at 5). Next, Mendes states that John Doe Two was informed of Mendes's injury and failed to act immediately.[5] (Doc. 2, at 5). Mendes claims that approximately four hours after his injury occurred, he was taken to the infirmary and treated. (Doc. 2, at 5-6). It is this delay in treatment to which Mendes attributes his new-found headaches, blackouts, and loss of balance. (Doc. 2, at 6).

    1. CONDITIONS OF CONFINEMENT

The Eighth Amendment protects prisoners from cruel and unusual punishment, including "the unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1,

---

[4] This Court interpreted Mendes's Complaint as alleging liability against Defendant Litwhiler as his actions pertain to Mendes's grievance procedures and not due to the actions of the John Doe Defendants. *See supra*.

[5] Mendes states that a piece of concrete fell from the ceiling and struck him in the back of the head, causing a bleeding wound to the back of his head. (Doc. 2, at 5).

5 (1992). These same considerations govern conditions of confinement posing an unreasonable risk of serious damage to the health of those incarcerated. *See Helling v. McKinney*, 509 U.S. 25, 35 (1993). A plaintiff must satisfy objective and subjective requirements to succeed on a deliberate indifference claim. *Smith v. Buskirk*, No. CIV.A. 12-4259, 2015 WL 328238, at *3 (E.D. Pa. Jan. 22, 2015) (citing *Helling*, 509 U.S. at 35). In the context of Mendes's lawsuit, he must objectively show that he was personally exposed to unreasonably dangerous conditions in his cell. *See Helling*, 509 U.S. at 35. The subjective prong requires a showing of "deliberate indifference," or evidence that John Doe One "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, the Court must focus on both John Doe One's subjective mindset and the objectively dangerous nature of the condition of Mendes's cell. *Farmer*, 511 U.S. at 839.

Here, Mendes satisfies the objective component of his Eighth Amendment claim as it pertains to the condition of his cell. Falling debris is a condition that is objectively unreasonably dangerous. *See Nance v. Nogan*, et al., No. 17-672, 2018 WL 2298357, *9 (D. N.J. May 21, 2018) (stating that the failure to correct numerous unsafe conditions on Plaintiff's unit, including falling debris, gave rise to an Eighth Amendment claim for relief.) Mendes was subjected to falling debris during the confinement in his cell, which was an unreasonably dangerous condition.

Mendes also satisfies the subjective component of his Eighth Amendment claim regarding his cell condition. Mendes alludes to John Doe One's mindset when he stated that he did not see any issue with Mendes's cell. (Doc. 2, at 5). Mendes states that he drew

attention to the fact that repairs were being done on the cell above his and John Doe One viewed the cell and stated that he did not see anything wrong. (Doc. 2, at 5). Although John Doe One stated that he did not see anything wrong with the cell, he was made aware of the risk caused by the construction by Mendes's comment. It is sufficient to show that the defendant had "actual notice of the risk" to show that the defendant possessed the subjective knowledge of the hazardous situation. *See Hooks v. Schultz*, No. 07-5627 2009 WL 777394, *12 (D. N.J. March 19, 2009); *see also Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996). Therefore, John Doe One was provided "actual notice of the risk" when Mendes alerted him to the condition of Mendes's cell and possessed the subjective knowledge of the hazard. *See Hooks*, No. 07-5627 2009 WL 777394, *12.

### 2. Delay in Medical Treatment

Additionally, the Eighth Amendment governs the deprivation of medical treatment and a prisoner's right to be free from cruel and unusual punishment. *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Dennis v. Jensen*, No. 10–1486, 2013 WL 2245144, at *3 (M.D. Pa. May 20, 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)). Such a claim requires that a plaintiff allege "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978) ("This standard is two-pronged. It requires deliberate indifference on the part of prison officials and it requires the prisoner's medical needs to be serious"). A serious medical need exists if the failure to treat a medical condition "may result in pain and suffering which no one suggests would serve any

penological purpose." *Estelle*, 429 U.S. at 103. To meet the deliberate indifference standard, it must also be shown that an official knowingly disregarded an excessive medical risk: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference may be manifested by an "intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury." *Beckett v. Dep't. of Corr.*, No. 10–0050, 2011 WL 4830787, at *11 (M.D. Pa. Oct.12, 2011). It is clearly established that denial of "indisputably warranted" treatment for nonmedical reasons is a violation of the Eighth Amendment. *Abu-Jamal v. Kerestes*, 2019 WL 3246677, at *5 (3d Cir. 2019). When a defendant establishes evidence of a serious medical condition and is denied appropriate treatment for a nonmedical reason, then deliberate indifference is adequately supported. *Abu-Jamal*, 2019 WL 3246677, at *5.

      Mendes asserts claims sufficient to allege cruel and unusual punishment as it pertains to the John Doe Defendants' delay in medical treatment. First, Mendes alleges a serious medical need because the failure to treat his injury resulted in pain and suffering. *Estelle*, 429 U.S. at 103. Mendes asserts that he was injured by a falling piece of concrete, after which he suffered from a bleeding wound on the back of his head. (Doc. 2, at 5). Mendes was prescribed medication for his injury which was cleaned and treated in the infirmary. (Doc. 2, at 5-6). Additionally, Mendes states that he still suffers from headaches, blackouts, and loss of balance due to his injuries which he did not suffer from before the incident. (Doc. 2, at 6). These allegations combined with another officer's perception of the "seriousness of the head injuries" are evidence that an injury existed and that the subsequent treatment four hours later

may have resulted in Mendes's pain and suffering. (Doc. 2, at 5-6); *see also Farrow v. West*, 320 F.3d 1235, 1247 (11th Cir. 2003) (stating that "delayed treatment for injuries that are of a lesser degree . . . may also give rise to constitutional claims). Therefore, the four-hour delay in treatment after Mendes's injury occurred may have caused the pain and suffering of which he currently experiences.

Next, Mendes alleges facts sufficient to show John Doe Two may have indicated deliberate indifference to Mendes's need for medical assistance due to his injury. Mendes states that he and three other inmates informed John Doe Two of Mendes's injury and the circumstances that caused the injury, to which John Doe Two responded that he "must wait on his partner." (Doc. 2, at 5). Mendes alleges that neither of the John Doe Defendants took him to the infirmary and that he only received medical treatment because another officer noticed his injury four hours later. (Doc. 2, at 5). The need to "wait on his partner" and ultimately failing to provide Mendes medical treatment is a nonmedical reason for delay and thus a violation of the Eighth Amendment. *See Abu-Jamal*, 2019 WL 3246677, at *5. Because John Doe Two was aware of the fact that Mendes was injured and did not seek prompt medical treatment for the injured inmate, Mendes has alleged sufficient fact to assert deliberate indifference against John Doe Two.

Therefore, Mendes has alleged facts sufficient for an Eighth Amendment claim of cruel and unusual punishment against John Doe One for deliberate indifference to the conditions of falling debris in his cell and John Doe Two for the four-hour delay in providing medical treatment.

E.  LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp*, 293 F.3d 103, 108 (3d Cir. 2002). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *see also Ruffin v. Mooney*, No. 3:16-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under § 1983 or a habeas statute). As the complaint in its current form does not set forth the proper factual allegations connected to Eighth Amendment legal claims against Defendants Wetzel, Ramson, West, Litwhiler, and Varner, dismissal is warranted. However, out of an abundance of caution, and to preserve Mendes's rights as a *pro se* litigant, the Court will allow him to file an amended complaint regarding the claims against Defendants Wetzel and Litwhiler.[6] The amended complaint must be a pleading that stands by itself without reference to the original complaint. *Young*, 809 F. Supp. 1185 at 1198. The amended complaint must be "simple, concise, and direct" as required by Rule 8(d)(1) of the Federal Rules of Civil Procedure. Failure to file an amended complaint in accordance with the aforementioned requirements may result in the dismissal of this action in its entirety. Plaintiff need not file a motion to amend his complaint, but may simply file a second amended complaint with this Court.

---

[6] The Court only grants leave to amend for the claims against Litwhiler that do not involve grievance procedures, if those do exist.

### III.  CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss as to Mendes's claims against Defendants Wetzel, Ramson, West, Litwhiler, and Varner. (Doc. 20). The claims against Defendants Wetzel, and Litwhiler are **DISMISSED WIHTOUT PREJUDICE**, with leave to amend, while the remaining dismissed claims regarding grievance procedures are **DISMISSED WITH PREJUDICE.** Defendants' Motion to Dismiss is **DENIED** as to all other claims. The Court grants Mendes leave to file an amended complaint within **thirty (30) days**.

An appropriate Order follows.

                                                      **BY THE COURT:**

**Dated: February 8, 2021**                              *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **United States Magistrate Judge**