# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ADAM JOSHUA MENDES,** | : | **No. 3:19-CV-2087** |
| | : | |
| **Plaintiff** | : | **(Caraballo, M.J.)** |
| | : | |
| **v.** | : | |
| | : | |
| **CO ROBACZEWSKI and** | : | |
| **CO SHERRILL,** | : | |
| | : | |
| **Defendants** | : | |

## **MEMORANDUM**

## I.   <u>Introduction</u>

Plaintiff Adam Mendes, an inmate proceeding pro se, initiated this civil rights action against seven individuals affiliated with the Pennsylvania Department of Corrections ("DOC") on October 24, 2019. Doc. 1.  After about six years of litigation, only two corrections officers, Defendants Robaczewski and Sherrill[1] (collectively "the Defendants") remain, along with two causes of action asserted under the Eighth Amendment of the United States Constitution: (1) a conditions of confinement claim against Robaczewski alone; and (2) a denial of medical care claim against both Defendants.  Doc. 48 at 3–4.

---

[1] The record does not clarify the Defendants' first names.

Pending before the Court is the Defendants' motion for summary judgment ("the Motion," Doc. 60), accompanied by a supporting brief (Doc. 62) and statement of facts (Doc. 63). The Motion is fully briefed and ripe for decision, and the Court has jurisdiction pursuant to Title 28, United States Code, Section 636(c) and Federal Rule of Civil Procedure 73. Docs. 19; 75.

For the reasons set forth below, the Court will grant summary judgment on Mendes's Eight Amendment claim for denial of medical care, and dismiss Sherrill from this action. The Court will deny summary judgment on Mendes's Eight Amendment conditions of confinement claim against Robaczewski. Finally, the Court will grant dismissal of Mendes's claims for compensatory and punitive damages.

## II.    Background

### A.    The Parties' Statements of Material Facts

As a preliminary matter, the Court notes that the Defendants' statement of facts is accepted in its entirety, as Mendes admitted all of those factual averments in his own responsive statement of material facts. Doc. 73. Mendes's filing also presents averments that fail to follow summary judgment procedures: (1) two unsupported statements

in Paragraphs 4 and 5, *id.* at 1; and (2) three "disputed facts," which also lack factual support and contain conclusory legal averments. *See id.* at 3. For those reasons, neither set of statements may be deemed admitted.

Litigants who oppose a motion for summary judgment must file their own statement of facts that: (1) directly and correspondingly "respond[] to the numbered paragraphs set forth in the [movant's] statement"; and (2) "include references to the parts of the record that support the statements." M.D. Pa. L. R. 56.1. Without such opposition, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted[.]" *Id.* This is so because pro se litigants, like other litigants, must follow the Local Rules. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (establishing that pro se litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.") (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

Here, Mendes's uncited statements and purported disputed facts run afoul of the summary judgment procedures on two grounds. First, all of his factual averment are advanced without any cited support in

the record.  "[I]n summary judgment motion practice, '[t]he burden remains on the nonmoving party, not the court, to identify sufficient facts from the record that show the existence of a genuine issue for trial.'"  *Gannaway v. Prime Care Med., Inc.*, 150 F. Supp. 3d 511, 524 (E.D. Pa. 2015) (second alteration in original) (citing *St. Louis v. Morris*, 573 F. Supp. 2d 846, 852 (D. Del. 2008)); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288–89 (3d Cir. 2018) ("Bare assertions, conclusory allegations, or suspicions will not suffice." (citation omitted)).  Here, the two factual premises advanced by Mendes—that "inmates were permitted out of their cells for the repairs [] due to safety concerns," and "that lunch is served after 10:30 a.m.," Doc. 73 at 1—are bereft of any supporting citations to the record, as are his purported "disputed facts."  *Id.* at 3.  Accordingly, they are not included in the analysis herein.[2]  *See, e.g.*, *Evans v. Columbia Cnty.*, 711 F. Supp. 3d 256, 278 (M.D. Pa. 2024) ("Where the party asserting a fact has not pointed to record evidence to support the fact, we do not include that fact in the statement of material facts[.]").

---

[2] The Court notes that, even if the factual averments were accepted as true, they would not alter the rationale or holding set forth herein.

Second, those purported "disputed facts" are assertions of legal nature, and therefore inappropriate for summary judgment purposes. *See* Doc. 73 at 3 ("There exists . . . genuine issue[s] of material fact as to whether . . . Robaczewski was deliberately indifferent to the risk of falling debris[,] . . . whether [Mendes]'s injuries constitute a serious medical need[, and] . . . whether . . . Robaczewski and . . . Sherrill were deliberately indifferent to [Mendes]'s serious medical needs."); *Wright v. Ryobi Techs., Inc.*, 175 F. Supp. 3d 439, 456 (E.D. Pa. 2016) (explaining that "[legal] conclusions[] . . . do not satisfy [nonmovant]'s obligation to show[] . . . that there are genuine factual issues for trial or his obligation to respond with facts of record that would contradict the facts the mov[ant] identified." (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 n.3 (1986))).

Therefore, pursuant to Local Rule 56.1, the statement of material facts and exhibits submitted by the Defendants are deemed admitted in their entirety.  *See United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 330 n.5 (3d Cir. 2005) (noting with approval adoption of "facts that were not clearly disputed by [nonmovant] with adequate references to

5

the record." (citation omitted)).  Mendes's two factual averments and

three legal assertions are not.

### B.    Factual Background

According to the undisputed facts, Mendes was an inmate at State

Correctional Institution Dallas during the operative period underlying

his complaint.  Doc. 63 at 1.  On May 14, 2019, the floor above Mendes's

cell underwent maintenance for a leaky pipe.  *Id.*  As the maintenance

team used a jackhammer to reach the pipe, all of the inmates assigned

to the block, including Mendes, were "congregate[d] in the day room" for

about one to three hours, until lunchtime.  *Id.*

After Mendes returned to his cell, he voiced concerns about the

cell's condition.  *Id.* at 2.  Specifically, Mendes observed that his cell was

"covered in a thick layer of dust and small rocks," which were "small,

flat, and thin; not baseball or rounder-type debris."  *Id.* (quotation

omitted).  He initially explained his concern about returning to the cell

because of the dust and rocks to Robaczewski.  *Id.*[3]  Mendes then

alerted Sherrill and Robaczewski about the dust in the cell, but Sherrill

---

[3] Although the record does not specifically identify Robaczewski as the corrections
officer with whom Mendes spoke, the parties' briefs and statements at oral
argument confirmed that Robaczewski's identity is not in dispute.

"did not acknowledge the condition of his cell," prompting Mendes to return to his cell.  *Id.*

While Mendes was cleaning his cell, "a chunk of cement fell from the ceiling and struck him in the head."  *Id.*  The chunk fell around the cell toilet, "but the area by the door, window, and the bottom bunk was safe."  *Id.* at 3.  Mendes was not knocked unconscious or thrown to the ground, but the impact caused a bleeding wound on his head and a scratch on his neck.  *Id.* at 2, 4.

Mendes requested medical attention, which he received after no more than about four hours.  The parties appear to dispute whether Mendes waited closer to two hours or closer to four hours to receive medical treatment.  *Compare* Doc. 62 at 12 ("two hour delay") *with* Doc. 72 at 15 ("a four-hour period of time").  The medical records indicate that Mendes estimated the time of the incident to be about noon, and that he reported to the infirmary at approximately 2:30 p.m. Docs. 63-2 at 1; 63-4 at 1.  But Mendes contends, without supporting evidence, that he was "left to bleed for a four-hour period[.]"  Doc. 72 at 15.  Mendes also estimated during his deposition that he was injured before lunchtime, and that lunch is served "around 11, 12:00."  Doc. 63-

1 at 35.  Accordingly, the Court construes the record in the light most favorable to Mendes, *see Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007), and assumes, for purposes of evaluating this motion that he waited approximately four hours to receive medical attention.

Mendes's initial demand for medical care was unmet.  Doc. 63 at 3.  Mendes then went to eat lunch at the dining hall, where he spoke with Officer Wilson about visiting the infirmary.  *Id.*  After the second shift started at approximately 2:15 or 2:30 p.m., Doc. 63-1 at 35, another officer visited Mendes's cell and permitted him to go to the infirmary.  Doc. 63 at 3.  Until then, Mendes pressed a tissue over his wound to prevent it from bleeding.  *Id.*

Mendes arrived at the infirmary around 2:30 p.m.  *Id.*  There, a nurse cleaned Mendes's wounds, administered a tetanus shot, and gave him some gauze and pain medicine.  *Id.* at 3–4.  The nurse informed Mendes that his wounds were "too small for stitches," as they consisted of a "1 cm abrasion to top of head with scant bleeding and a 2 [inch] superficial scratch to back of neck."  *Id.* at 4 (second alteration in original).  The nurse also took photographs of Mendes's face, head wound, and neck abrasion.  *Id.* at 5; Doc. 63-6.  The record from that

8

day explains that Mendes's wound was "[u]ncomplicated" and "[c]lean without foreign body or signs of infection," and showed "scant bleeding to small wound on top of head."  Doc. 63 at 4–5.  Further, Mendes denied losing consciousness and wanted "Motrin for slight H[eadache] . . . ."  *Id.* at 5.

Two days later, on May 16, 2019,[4] Mendes again visited the infirmary for a headache that he "believe[d] was caused by the May 14, 2019, incident."  *Id.*  During the second visit, Mendes stated that "his headache was not severe, just annoying," and received Motrin.  *Id.*  The medical provider that day noted that the "wounds had healed[,] and referred back to his prior note regarding no loss of consciousness."  *Id.*

### C.    Procedural History

Mendes, proceeding pro se, filed his original complaint on October 24, 2019, asserting several causes of action against seven individuals affiliated with DOC, including two John Does.  Doc. 1.  After briefing on the defendants' subsequent motion to dismiss (Doc. 20), the Court granted the motion in part, and denied it in part.  Docs. 24–25.  Of

---

[4]  The Defendants clarified that the date listed in their statement of facts, July 16, 2019, Doc. 63 at 5, was a typographical error.  Doc. 62 at 5 n.2.

9

relevance to this memorandum, the Court denied the motion to dismiss Mendes's Eight Amendment claims for conditions of confinement and denial of medical care.  Doc. 24 at 14.

Specifically, the Court held that Mendes's allegation concerning falling debris in his cell sufficiently pleaded an objectively dangerous circumstance for purposes of his Eight Amendment conditions of confinement claim.  *Id.* at 11.  The Court also found that the complaint alleged that Mendes put Robaczewski (then identified as "John Doe One") on notice of the cell's conditions and risk.  *Id.* at 11–12.  Similarly, the Court held that "Mendes alleges a serious medical need because the failure to treat his injury resulted in pain and suffering."  *Id.* at 13.  Thus, his allegations "that an injury existed and that the subsequent treatment four hours later may have resulted in Mendes's pain and suffering," sufficed to survive dismissal when viewing the pleadings in the light most favorable to Mendes.  *Id.* at 13–14.

On July 15, 2021, after Mendes failed to file an amended complaint, all defendants except for the two John Does moved to dismiss for lack of prosecution.  Docs. 30–31.  On August 16, 2021, the Court granted the motion to dismiss and terminated the five moving

defendants.  Docs. 35–36.  Then, on August 24, 2021, Mendes requested an extension of time to amend his complaint.  Doc. 37.  The Court granted the motion and directed Mendes to submit his amended complaint by January 11, 2022.  Doc. 36.  Mendes timely mailed his first amended instrument on January 9, 2022, Doc. 37 at 9, and the pleading was lodged four days later, asserting claims against only the two John Doe defendants.  Doc. 37.

About two months later, on March 1, 2022, defense counsel informed the Court that they would not respond to Mendes's first amended complaint, because DOC "was unable to identify" the John Doe defendants, leaving counsel with no ascertainable clients.  Doc. 40. The Court subsequently granted Mendes 90 days to conduct limited discovery to identify the John Doe defendants.  Doc. 42.

On December 11, 2023, Mendes filed his live second amended complaint, which identified the Defendants by their last names.  Doc. 48 at 1.  The second amended complaint also presents two claims: (1) a conditions of confinement claim against Robaczewski alone; and (2) denial of medical care claims against both Defendants, Robaczewski and Sherrill.  *Id.* at 3–4.  The Defendants timely appeared and

11

submitted their answer to Mendes's second amended complaint. Docs. 53–54; 56.

Following the close of discovery, on October 30, 2024, the Defendants submitted the Motion and supporting documents. Docs. 60; 62–63. The Motion reasons that the Court should grant summary judgment for the defendants on all claims and that, should any claim survive, Mendes be limited to recovering nominal damages. Doc. 60 at 6. Mendes filed his opposing brief and statement of facts on March 11, 2025, and the Defendants timely filed their reply brief. Doc. 74. Oral argument on the Motion took place on January 30, 2026 (Doc. 80), rendering the Motion fully briefed and ripe for decision.

## III.  Discussion

### A.  Legal Standard

Summary judgment is appropriate only when record materials, including but not limited to, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wishkin*, 476 F.3d at 184; Fed. R. Civ. P. 56(a), (c)(1)(A). In

determining whether a genuine issue of material fact exists, the court must view the evidence "in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor." *Wishkin*, 476 F.3d at 184.

A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is material only if it "might affect the outcome of the suit under the governing law . . . ." *Id.* But "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], . . . which it believes demonstrate the absence of a genuine issue of material fact." *Id.* "'[T]he non-moving party must [then] oppose the motion and, in doing so, may not rest upon the mere allegations or denials of his pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'"

*Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Even where, as here, the movant argues that the non-movant has failed to produce sufficient evidence to prevail on a claim at trial, the movant must still satisfy the initial burden of informing the court of the basis for its motion. *Celotex*, 477 U.S. at 323 ("a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[.]").  This means that, "[w]here the moving party does not have the burden of proof on the relevant issues," and they have pinpointed in their motion "deficiencies in the opponent's evidence" sufficient to show no reasonable jury could return a verdict for the non-movant, they are entitled to "judgment as a matter of law." *Anchorage Assocs. v. V.I. Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990).

## B.    Deliberate Indifference under the Eighth Amendment

The Civil Rights Act of 1871 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

14

> liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 "is not a source of substantive rights but rather a mechanism to vindicate rights afforded by the Constitution or a federal statute." *Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Thus, "the basic cause of action requires that a § 1983 plaintiff prove two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011) (citations omitted). For the Motion's purposes, the parties do not appear to dispute that the Defendants were state employees at the time of the incident. The question is whether they deprived Mendes of his rights under the Eighth Amendment.

The Eighth Amendment of the United States Constitution prohibits "cruel and unusual punishments[.]" U.S. Const. amend. VIII. That is, "[t]he Eighth Amendment prohibits the imposition of unnecessary and wanton infliction of pain contrary to contemporary

15

standards of decency." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  Therefore, generally, "[a]n Eighth Amendment claim against a prison official must meet two requirements: (1) the deprivation alleged must be, objectively, sufficiently serious; and (2) the prison official must have a sufficiently culpable state of mind." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001) (quotation omitted) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

The first prong "is satisfied when an inmate is deprived of 'the minimal civilized measure of life's necessities.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)).  That is, an inmate must receive "adequate food, clothing, shelter, and medical care." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quotation omitted) (quoting *Farmer*, 511 U.S. at 832) (discussing dismissal motions).  That, of course, does not mean that prisons must be "comfortable." *Id.* (quotation omitted) (quoting *Rhods v. Chapman*, 452 U.S. 337, 349 (1981)).

As for the second prong, the plaintiff must prove that the defendant acted with "deliberate indifference to inmate health or

16

safety." *Beers-Capitol*, 256 F.3d at 125.  This requires that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draw the inference." *Mammana*, 934 F.3d at 373 (quotation omitted) (quoting *Farmer*, 511 U.S. at 837).  Relevant evidence would "show[] that the risk . . . was longstanding, pervasive, well-documented, or expressly noted by prison officials . . . such that defendants must have known about the risk." *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 445 (3d Cir. 2020) (footnote and quotation omitted) (first quoting *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 259 (3d Cir. 2010); and then citing *Farmer*, 511 U.S. at 842–43).  Also, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Beers-Capitol*, 256 F.3d at 131 (quoting *Farmer*, 511 U.S. at 842).

Conversely, "a defendant can rebut a prima facie demonstration of [the second prong] . . . by establishing that he did not have the requisite level of knowledge or awareness of the risk." *Id.* at 133 (citing *Farmer*, 511 U.S. at 837).  Also, mere notice or awareness is insufficient. *Id.* at 140.  Instead, the plaintiff needs evidence establishing that the

17

defendant "believed that the[] allegations were likely to be true, or that the evidence surrounding the allegations was so strong that he must have believed them likely to be true." *Id.*

### 1.    Conditions of Confinement

The first claim, presented solely against Robaczewski, rests on his decision to place Mendes in his cell, despite expressed concern about the cell's post-maintenance environment. Docs. 48 at 4; 63 at 1–2. For purposes of the Motion, Robaczewski does not contest the objective element of Mendes having been subject to a risk of serious harm when placed in his cell with falling debris. Doc. 62 at 9. Rather, Robaczewski challenges whether Mendes can establish his subjective knowledge and disregard of that risk. *Id.* According to Robaczewski, as the maintenance activities had ceased and the dust in the cell was settling, he had no reason to believe that additional pieces of the ceiling would fall. *Id.* Robaczewski also avers that Mendes only conveyed his concerns about the dust in the cell, not about the condition of the ceiling. *Id.* at 9–10.

Mendes rebuts that he notified Robaczewski about both the dust and debris that fell from the ceiling, who declined to inspect the

18

condition of the cell.  Doc. 72 at 12.  Mendes specifically avers that he notified Robaczewski that debris was actively falling from the ceiling, and flags the absence of evidence in the record evincing Robaczewski's subjective intent.  *Id.* at 13.  As the record evinces a disputed issue of material fact concerning Robaczewski's subjective knowledge of debris falling from the ceiling, and thus whether he disregarded that risk, summary judgment is not warranted.

According to Mendes's testimony, Robaczewski looked at Mendes's cell, concluded that there was no substantial risk, and told Mendes to return to his cell.  Docs. 63-1 at 14–15; 72-1 at 15–16.  More specifically, in describing his conversation with Robaczewski, Mendes testified in his deposition:

> There was dust all over the cell.  And from the jackhammering you could tell, like, it had made it worse as far as things falling.  Because before that, only paster, or whatever they coat the wall with, had fell.  Now it was like a thick la[]yer of dust and just debris, like minor—like little rocks and stuff like that all in the cell.  And I said, hey, the cell's messed up, *the ceiling looks like it's falling*, it looks like it's worse.  And he just told me you gotta go in there.  There was a big, kind of, like, confrontation about that because I didn't really want -- feel comfortable go going in there.  And they said you gonna get written up if you don't go in there, you gotta go in there, it looks fine to me.

Docs. 63-1 at 14–15; 72-1 at 15–16 (emphasis added).

Mendes also provides affidavits signed by six other inmates (Doc. 72-2), five of whom state that Mendes's cell was in a less-than-ideal condition.  *Id.* at 3 ("not being suitable for anyone to be in[]"), 4 ("told the working officer that part of the ceiling . . . was falling," and "the cell wasn't ready for anyone to be inside."), 5–7 ("a lot of dust and debries everywhere, and pieces of cement coming off the ceiling").

Mendes's testimony runs contrary to Robaczewski's position in the Motion that Mendes "only reported to Robaczewski his concerns about the dust," Doc. 62 at 9; a position that is not supported by any evidence of record, including deposition testimony from Robaczewski.  Likewise, Robaczewski's contentions that a reasonable person would not expect pieces of the cell ceiling would fall, and that he had no subjective reason to believe such a risk existed, *id.* at 9–10, are advanced without any support in the record, and conflict with Mendes's statement that he put Robaczewski on notice of the potentially dangerous conditions.

Thus, we are left with Mendes's sworn testimony, offered as evidence of Robaczewski's subjective deliberate indifference, and bolstered in part by other inmates' affidavits.  Robaczewski's knowledge of the cell's condition and risk were the very factors that the Court

previously identified when deeming the allegations of the complaint sufficient to survive the Defendants' motion to dismiss, Doc. 24 at 11–12, and are now supported by record evidence on summary judgment. And to the extent that Robaczewski, during oral argument, offered a differing interpretation of Mendes's deposition testimony, and questioned the credibility of the inmates who submitted affidavits, the Court is not the appropriate party to make such determinations. Those factual disputes fall solely in the province of the factfinder, and warrant denial of summary judgment.

### 2.    Denial of Medical Care

The second claim, asserted against both Robaczewski and Sherrill, is premised on the allegations that the Defendants failed to send Mendes to the prison infirmary for medical treatment, resulting in an approximate four-hour delay before Officer Wilson intervened. Docs. 48 at 4; 63 at 3. Here, the Defendants challenge both the objective and subjective prongs of Mendes's Eighth Amendment claim. Specifically, they contend that Mendes cannot establish that he presented a serious medical need after being struck by the falling debris, or any significant delay in care that resulted in injury. Doc. 62 at 10–11.

21

In response, Mendes asserts that he need only show that his injury resulted in pain and suffering that required medical attention, and that the Defendants did not seek prompt medical attention after being notified of the injury.  Doc. 72 at 15.  He flags the desire of one officer to wait for his partner as an impermissible nonmedical reason for delay.  *Id.*  As a reasonable jury could not conclude that Mendes suffered from an objectively serious medical need, summary judgment is warranted.

At the summary judgment stage, a viable claim for deliberate indifference to a serious medical need requires that the plaintiff show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Fac.*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse*, 182 F.3d at 197).  "An inmate's allegations of medical malpractice or negligence are insufficient to meet that standard, as are 'mere disagreements' concerning the proper course of treatment." *Whetstone v. Ellers*, 447 F. App'x 286, 288 (3d Cir. 2011) (per curiam) (first citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); and then citing

*Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).

Regarding the objective requirement, a plaintiff may meet this prong in two ways. First, he may prove a serious medical need by showing that it was "diagnosed by a physician as requiring treatment or . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth*, 834 F.2d at 347 (citations omitted). Alternatively, a serious medical need exists if the "denial or delay in the provision of adequate medical care" results in an "unnecessary or wanton infliction of pain," or "causes an inmate to suffer a life-long handicap or permanent loss." *Id.* (collecting cases).

A notable corollary is that "[i]njuries such as cuts, scrapes, [and] scratches[] . . . simply do not in themselves . . . necessarily call[] for immediate medical treatment . . . ." *Banks v. Beard*, 2006 WL 2192015, at *13 (W.D. Pa. 2006); *see also Stankowski v. Farley*, 251 F. App'x 743, 748 (3d Cir. 2007) (per curiam) ("cuts requiring no more than small bandages do not constitute 'serious medical needs[.]'" (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976))). Nor do minor bleedings caused by abrasions. *See, e.g.*, *Wisneski v. Denning*, 2014 WL 1758118, at *22

23

(W.D. Pa. 2014) ("bruising and abrasions with associated bleeding do not rise to the level of a 'serious medical need.'"); *Gray v. Wakefield*, 2012 WL 4509752, at *6 (M.D. Pa. 2012) (relatively minor "[cuts, bruises, and bleeding] do not constitute a serious medical need." (citations omitted) (collecting cases)).

Against that legal framework, Mendes's minor injuries cannot meet the objective prong of the analysis. Both parties agree that, though Mendes's wound was bleeding, the nurse assessed that it was "too small for stitches." Docs. 63 at 3; 73 at 2. They also agree that Mendes was able to stop the bleeding by pressing a single tissue over the wound. Docs. 63 at 3; 73 at 2. And the relevant medical records reveal that Mendes's injuries consisted of "a *tiny* abrasion to top of head with *scant* bleeding and a *2" superficial* scratch to left back of neck." Doc. 63-2 at 1 (emphases added). Further, the nurse who tended to Mendes's injuries noted that they were "[u]ncomplicated" and "[c]lean without foreign body or [s]ign of infection." Doc. 63-3 at 2.

Photographs of the injuries corroborate those records, and yield the unavoidable conclusion that no reasonable jury could find that Mendes presented a serious medical need requiring a physician's

24

attention. Indeed, Mendes did not even require the attention of a physician, with his cuts and scrapes addressed solely by the nurse practitioner. Doc. 63 at 3. Under the current Eighth Amendment jurisprudence, such minor wounds do not satisfy the objective inquiry of the deliberate indifference standard. *See, e.g., Banks*, 2006 WL 2192015, at *13; *Stankowski*, 251 F. App'x at 748; *Wisneski*, 2014 WL 1758118, at *22; *Gray*, 2012 WL 4509752, at *6.

Mendes contends that he suffered "long-term and lasting injuries, including headaches, blackouts, and loss of balance," but failed to offer any supporting medical evidence beyond his own uncorroborated deposition testimony. Doc. 72 at 15. Namely, he stated that his headaches, at the time of his testimony, were "not as frequent" and merely required a regular prescription of Motrin, which he eventually stopped taking due to financial reasons. *Id.* at 49–50. Further, he stated that "[t]he only thing that stayed with [him] is the neck problem," where "the back of [his] neck hurts." *Id.* at 51.

Mendes does not offer any expert reports or medical records to corroborate claimed injuries of a more lasting nature, or that the alleged delay in treatment exacerbated his injuries, and he

25

acknowledged the absence of such records during oral argument. Indeed, the records concerning Mendes's follow-up visit to the infirmary, which took place on May 16, 2019, show that he complained only about a headache, which was "just annoying," "not severe." Doc. 63-5 at 1. Moreover, his head and neck abrasions had already healed. *Id.* Though the Court is sympathetic toward Mendes's plight, no evidence indicates that the alleged delay in medical treatment caused the claimed neck pain. *See Monmouth*, 834 F.2d at 347. Also, "no evidence exists that plaintiff, subsequent to the incident, put in a sick call slip, or sought additional medical attention." *See Lindsey v. Brady*, 537 F. Supp. 2d 666, 671 (D. Del. 2008) (citation omitted). Based on that scant record, no reasonable jury could find that Mendes suffered either less an "unnecessary or wanton infliction of pain," or "a life-long handicap or permanent loss." *See Monmouth*, 834 F.2d at 347.

Accordingly, the denial of medical care claim will be dismissed upon consideration of the objective prong alone. As that claim is the only one asserted against Sherrill, he will be dismissed from this action.

## C.   Compensatory and Punitive Damages

Finally, the Defendants request that the Court dismiss Mendes's requests for punitive and compensatory damages for any surviving claims, and limit him to nominal damages, by deeming his injuries de minimis.  Doc. 62 at 12–14.  Mendes advances his alleged physical injuries as sufficient to warrant compensatory damages, and avers that a jury determination of deliberate indifference on his underlying claim would equate to a finding of reckless or callous indifference for purposes of punitive damages.  Doc. 72 at 16–17.  His de minimis injuries, however, preclude him from obtaining compensatory damages, and he offers no record evidence to support his claim for punitive damages.

Title 42, United States Code, Section 1997e provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a proper showing of physical injury."  42 U.S.C. § 1997e(e).  To meet that standard, a plaintiff must show "a less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury."  *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).  As explained by the Court of Appeals:

> We believe that reading 1997e(e) to allow a plaintiff to allege any physical injury, no matter how minor, would produce an unintended (indeed absurd) result. Were we not to read 1997(e) as requiring more than a *de minimis* physical injury, we would turn its physical injury prerequisite into a mere pleading requirement, thereby rendering the requirement meaningless as a practical matter. Another prisoner might be able to assert an emotional injury by pleading that he received a paper cut, for example. This result runs counter to Congress's intent to curtail frivolous and abusive prisoner litigation. In so doing, Congress noted that, unlike physical injuries, emotional injuries are inherently difficult to verify and therefore tend to be concocted for frivolous suits.

*Id.* at 535–36 (citations and quotations omitted).

"The Third Circuit has not provided a bright line rule for district courts to follow when applying this test to prisoner claims." *Hyman v. Giorla*, 2014 WL 881137, at *6 (E.D. Pa. 2014). "However, the prevailing view is that physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks. . . . Furthermore, [i]njuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *In re Bayside Prison Litig.*, 2010 WL 4916716, at *3 (D.N.J. 2010) (citation and quotations omitted).

Although "[d]istrict courts have been hesitant to find that an identifiable bodily injury was *de minimis* as a matter of law," *Hyman*, 2014 WL 881137, at *6, Mendes's injuries readily fall within that categorization. As reflected in the medical records, and corroborated by his deposition testimony, Mendes suffered a slight abrasion on his head, and a scratch on his neck, from the debris that fell from his cell's ceiling. Doc. 63-2 at 1. Upon arriving at the infirmary, a nurse cleaned his wound, and gave him gauze, pain medicine, and a precautionary tetanus shot. Docs. 63-1 at 39–40; 63-2 at 1; 63-3 at 1–2. The nurse informed Mendes that his abrasion was too small for stitches, as he had only a "1 cm abrasion to top of head with scant bleeding and a 2 [inch] superficial scratch to back of neck," Doc. 63 at 4; a description corroborated by the nurse's contemporaneous photographs. *See* Doc. 63-6 at 2–4. Two days later, Mendes again visited the infirmary for a headache, which he deemed "not severe just annoying," confirmed that he never lost consciousness, and received Motrin. Doc. 63-5 at 1. By then, his "very superficial" abrasions had healed, and he displayed "no cerebellar signs." *Id.* Although Mendes claimed to suffer thereafter from periodic headaches for several months, and a sore neck, Doc. 63-1

29

at 48, the medical records evince no further treatment or requests for treatment.

Scratches and abrasions of that nature are the precise type of *de minimis* physical injury that falls short of warranting compensatory damages for mental and emotional injury under Section 1997e(e). Mendes's wounds healed within days, received only superficial medical treatment, and resulted in no demonstrated permanent injury or loss of functioning.  His claims of more lengthy pain and suffering are bereft of any corroborating evidence.  Under those circumstances, the Court may, and does, find his injuries de minimis as a matter of law.  *See, e.g., Powell v. Pa. Dep't of Corr.*, 2019 WL 8510289, at \*10 (M.D. Pa. 2019) (finding injuries de minimis when guard allegedly caused inmate to fall and strike his head, requiring Motrin), *report and recommendation adopted,* 2020 WL 1922639 (M.D. Pa. 2020); *Bayside*, 2010 WL 4916716, at \*3 (upholding de minimis injury determination when guard allegedly hit inmate in the hand with a stick, resulting in "pain and swelling in his pinky finger for approximately two days"); *Knight v. Walton,* 2015 WL 9243902, at \*9 (W.D. Pa. 2015) (finding injuries *de minimis* when inmate was repeatedly and forcefully restrained, but that any injuries

30

"resolved within sixteen days or less and that no treatment was required beyond a pain reliever"), *report and recommendation adopted*, 2015 WL 9239003 (W.D. Pa. 2015), *aff'd*, 660 F. App'x 110 (3d Cir. 2016).

Although Mendes deems Section 1997e(e) inapplicable, because he "failed to advance claims of mental or emotional injury," Doc. 72 at 16, a review of the second amended complaint and record concludes otherwise.  In his pleading instrument, Mendes demands "One hundred thousand Dollars ($1,000,000.00) [sic]" in compensatory damages for the following claimed injuries:

> Plaintiff at the time of the incident suffered a serious head wound, that bled profusely, for over 4 hours, until finally treated, cleaned and Plaintiff was then provided Medication and the injury was photographed.  Since the injury Plaintiff still suffers severe headaches, loss of balance, occasional black outs, mood swings and loss of memory.

Doc. 48 at 5.

Putting aside the uncertain nature of the precise amount of money that Mendes seeks, and the absence of record evidence corroborating his claimed long-term injuries, he does not seek compensatory damages for any tangible losses.  "Compensatory damages for civil rights claims are governed by general tort law compensation theories, and a plaintiff may

31

therefore recover compensatory damages if he proves that the defendant violated his constitutional rights in a way that caused him compensable injury." *Saunders v. Criley*, 2024 WL 4858584, at *6 (M.D. Pa. 2024) (citing *Allah v. Al-Hafeez*, 226 F.3d 247, 250 (3d. Cir. 2000)). Thus, "[c]ompensatory damages may be awarded for, *inter alia*, 'out-of-pocket loss and other monetary harms.'" *Id.*

Mendes does not, however, seek recovery for any out-of-pocket medical expenses, claimed lost wages, or other monetary harms. Indeed, he confirmed in his testimony that, although the prison infirmary ordinarily charged inmates for Motrin, he received it for free until he stopped taking it. Doc. 63-1 at 40–41, 48–49. And he did not believe that he had a paying job at the prison at the time of the accident, attributing periods of unemployment to his unrelated psychiatric medication. *Id.* at 41–44. Thus, Mendes's claimed compensatory damages must necessarily be attributed to his alleged pain and suffering, as he identifies no monetary losses triggered by his physical injuries. Accordingly, his request for compensatory damages will be dismissed.

32

Despite Section 1997e(e)'s limitations, "certain absolute constitutional rights may be vindicated by an award of nominal damages in the absence of any showing of injury warranting compensatory damages." *Allah*, 226 F.3d at 250–51. Section 1997e(e) also does not bar punitive damages, which may be awarded based solely on a constitutional violation, regardless of any claimed emotional or mental distress. *Scott v. Kauffman*, 2023 WL 5004047, at *12 (M.D. Pa. 2023). "Claims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell*, 318 F.3d at 533 (quoting *Allah*, 226 F.3d at 252).

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, even if Robaczewski exhibited some measure of negligence when instructing Mendes to return to his cell, despite its alleged conditions, there is no evidence in the record by

33

which a reasonable jury could infer that Robaczewski "acted maliciously or recklessly." *Michel v. Levinson*, 437 F. App'x 160, 164 (3d Cir. 2011) (observing that "punitive damages in general represent a limited remedy, to be reserved for special circumstances" (quoting *Savarese v. Agriss*, 883 F.2d 1194, 1205 (3d Cir.1989))).  Indeed, during oral argument, Mendes acknowledged his inability to offer such evidence. Accordingly, his request for punitive damages will be dismissed, and Mendes will be limited to seeking only nominal damages at trial.

## IV.   Conclusion

For the reasons set forth above, the Motion is **GRANTED IN PART AND DENIED IN PART**.  Mendes's Eight Amendment claim for denial of medical care and claims for compensatory and punitive damages will be dismissed, along with Sherrill as a defendant.  The Court will deny summary judgment on Mendes's Eight Amendment conditions of confinement claim against Robaczewski.  A separate Order shall be issued.

Date:  March 31, 2026          *s/ Phillip J. Caraballo*
                               Phillip J. Caraballo
                               United States Magistrate Judge

34